UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

JASON FLAKES,

        Plaintiff,

v.

RONALD E. DRINKERT et al.,

        Defendants.
_____/

Case No. 1:18-cv-593

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against all Defendants for failure to state a claim.

**Discussion**

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Michigan. The events about which he

complains, however, occurred at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Michigan. Plaintiff sues RGC Warden Jeremy Bush, RGC Healthcare Unit Manager J. Crisenbery; RGC Psychologist J. Nevins, RGC Nurse Practitioner Ronald E. Drinkert; RGC Inspector Unknown Cheeks; RGC Assistant Residential Unit Supervisor Unknown Trussell; and RGC Captain Unknown Malloi.

Plaintiff alleges that he suffers from rhabdomyolysis. As a result, it is particularly important that he stay well hydrated. Plaintiff alleges that Defendants were deliberately indifferent to that serious medical need when they refused to give him a cup to keep in his cell. Cups were considered contraband because they could be used as weapons against staff.[1] Instead, they required him to drink from water obtained from the sink in his cell using his cupped hand.[2] Eventually, on July 21, 2017, Petitioner was provided a cup; however, for a month he could only drink water in his cell using his hand. Plaintiff was subsequently transferred to the Carson City Correctional Facility, in Manistee, Michigan.

---

[1] The danger inherent in a cup may not be readily apparent, but cups are often designated as contraband for a variety of reasons. *See, e.g., Taifa v. Bayh*, No. 3:92-cv-0429, 1995 WL 646300, at *22 (N.D. Ind. Aug 22, 1995) ("[P]lastic cups can very easily be turned into a weapon. The cups can be torn or broken, which leave a sharp edge, and [can] cut skin. . . . [t]hey can also be jabbed into someone's eye."); *United States v. Higgs*, 353 F.3d 281, 329 (4th Cir. 2003) (court noted that an inmate used a cup to throw urine on another inmate); *Jackson v. Zerrangue*, 55 F.3d 633 (5th Cir. 1995) (inmate alleged prison official defendants were deliberately indifferent to his safety when they permitted another inmate to keep a cup, contrary to policy, that was used as a weapon against the plaintiff); *Walton v. Breeyear*, No. 9:05-cv-0194, 2007 WL 446010, at *2 (N.D.N.Y. Feb. 8, 2007) (inmate used broken cup to cut another inmate in the face); *Zilch v. Sepanek*, No. 13-cv-144, 2014 WL 546904 (E.D. Ky. Feb. 10, 2014) (foam cups were one of the ingredients in a written description of how to build an explosive device found in a prisoner's cell); *Brown v. Secore*, No. 9:08-cv-085, 2010 WL 980233, at *2 (N.D.N.Y. Mar. 15, 2010) (cups banned because they could be used to throw urine or cleaning solution); *Young v. Medden*, No. 03-5432, 2010 WL 1628800 (E.D. Pa. Apr. 20, 2010) (same).

[2] As Plaintiff describes it:

> Once Plaintiff made it to his assigned housing unit he noticed the water system, sink, in his cell was not built like a drinking fountain. The nozzle was facing downwards running water directly in to the basin, forcing him to get into an awkward position in a tight spot between either the bunk bed and sink or lockers and sink, using one of his hands to press the button and the other to drink water out of.

(Compl. ECF No. 1, PageID.9.)

Plaintiff also alleges that on July 19, 2017, Defendant Trussell refused to process his mail—a grievance regarding the cup issue that Plaintiff was sending to Judge Janet Neff so she could assist him in obtaining relief. Accordingly, Plaintiff contends that Defendant Trussell violated Plaintiff's First Amendment right to access the courts.

Plaintiff seeks compensatory and punitive damages totalling $16,000,000.00.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff raises claims under the Eighth Amendment and the First Amendment.

### III. Eighth Amendment claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff's allegations fall short as to both elements. Although it is true that Plaintiff's condition presents a serious medical need, he has failed to allege facts showing that the need was not met by drinking water from the sink using his cupped hand.[3] Moreover, Plaintiff has failed to allege facts showing that any Defendant inferred that Plaintiff's use of his cupped hand would give rise to a substantial risk of serious harm. Accordingly, Plaintiff has failed to state a claim for violation of the Eighth Amendment.

---

[3] This Court has previously concluded that requiring a prisoner to drink water from his cupped hand is not, standing alone, a violation of the Eighth Amendment. *See Denhof v. Michigan*, No. 1:14-cv-495, 2014 WL 3401985, at *10 (W.D. Mich. July 10, 2014); *see also Powell v. Harrington*, No. 4:14-cv-P111, 2015 WL 1407384, at *3 (W.D. Ky. Mar. 26, 2015) ("[T]he lack of a cup to drink from . . . does not rise to the level of a constitutional violation.").

## IV. First Amendment

Plaintiff next claims that Defendant Trussell violated his First Amendment right to access the Courts when she refused to process Plaintiff's mail to Judge Janet Neff. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

> capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff cannot demonstrate any injury here. Indeed, Plaintiff's letter that Defendant Trussell purportedly refused to process was mailed to Judge Neff on July 20, 2017, the day after he wrote the grievance and received by the Court on July 24, 2017. (Case No. 1:10-cv-25, ECF No. 276, PageID.2165-2168.) There is simply no possible injury that accrued to Plaintiff because the Court promptly received the letter Plaintiff sent. Accordingly, Plaintiff has failed to state a First Amendment claim against Defendant Trussell.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants all will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: June 18, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge